## GLENN v. RAILROAD.

(Filed April 30, 1901.)

NEGLIGENCE — *Contributory Negligence — Personal Injuries — Railroads—Trespasser on Track.*

This action for injuries received on a railroad track was properly dismissed under the evidence.

ACTION by Samuel Glenn, by his next friend, J. W. Glenn, against the Norfolk and Western Railway Company, heard by Judge *E. W. Timberlake* and a jury, at November Term, 1900, of FORSYTH County Superior Court. The following is the testimony of the plaintiff:

"I live out in the country in this county about four miles. I went to West Virginia about 1897. I was 19 years old. I went over there to work. I thought of working the mines at that time. My brother James and Fred. Bennett were with me. I was injured at Falls Mills Station. I was going to the station. I should suppose as near as I could guess it to be about 250 or 200 yards to the station. I was going to Pocahontas. I was to take the train at Falls Mills Station. It was in the day time, in the morning about 11 o'clock, I reckon. It was between 11 and 12 o'clock. It was a clear day. The train was not behind time I suppose. They did not blow any station blow. It did not blow any road crossing. I started to the station, Bramish. I thought I would walk down that way and see part of the country. I was told it was about three miles and I could get there in time going through that way. The cars overtook me. It looked like

the train would get to the station first. I was walking lively. My brother was not along with me, he went on ahead and was already down there at the station waiting for us to come on the next mail. I was walking down the track to get to the station to get there in time to get on.

"The fellow that was with me said: 'I will run on ahead of the train and get the tickets and you can get right on.'

"He went on and got the tickets and I came on behind walking pretty swift. There were two tracks. I thought one was a side-track. I was not thinking I was in any danger. When I got about 100 yards to the depot I thought I would stop and let the train go by and just as I looked around to see the train pass, it struck me right here somewhere on the foot and threw me over on the ground and knocked me on the head and somewhere on the side. That track led right direct to the depot. I took it to be the side-track. There was no signal given. There was a crossing right there. It knocked a hole in my head. It struck my shoes and hurt my foot. I did not do anything for four or five weeks. It was three or four days before I could walk. Every cloudy spell of weather now, and damp days, my foot and head hurts so I can not do scarcely anything at all. I had a grip-sack in my hand which I kept when my partner ran on ahead to get the tickets. I was going to the station and the train was coming behind me."

Upon cross-examination, by counsel for defendant, witness testified: "It was a bright clear day. It was about 11 or 12 o'clock in the day. I had never been about in that part of the country before. I had walked about three miles. I had Fred. Bennett with me. My brother had gone on ahead. I heard the train coming just before I got to the depot, but I did not look back. I told Fred. to run on ahead and get the tickets and I took the baggage. I was going down the track the same direction the train was. The first time I heard the

train it was up the road.   It was a mile and a half.   I could hear it coming all the way.   It did not blow anywhere.   The last time I heard it blow I could not tell; I reckon it was about one mile off.   I could hear it plainly coming on the track.   I changed from one track to the other directly after I heard the train coming.   I said to myself, 'I will get on the side-track.'   I did not turn round to see whether it was coming on the track I was on or not.   I thought to myself I was on the side-track because I thought the main line was the one that runs closer to the depot.   I could not say which one was the main line at this time.   I did not look back when I came on the track behind me.   When I did look back I could not discover what track the line was on.   I do not know how long these double tracks are."

A map was here shown the witness, who said:   "I was on the left-hand track before I was struck.   I was on the right-hand track when I was struck.   I came on the track before I got to the bridge.   I crossed just a little bit before I got to the public road.   When I looked back I could not discover which track the train was on.   I said to myself, 'Here's the depot standing on this side,' and I got on the other track.   I knew the train generally blew for cattle.   I thought I was right and did not change.   If they had rung a bell they could have told me better.   I knew which track I was on.   I had not noticed the double track, except about a mile, I just took it to be a side-track.   It was confusing to me which track to get on when the engine was coming.   I was used to single tracks in this country.   I could not tell what track the engine was on; I made a mistake in getting on the wrong track.

The following statement was read to witness after examination by him and his admitting he signed it:   (Objection by plaintiff.)

### STATEMENT SIGNED "SAM. GLENN."

"I was coming to Pocahontas and wanted to take the train at Falls Mills. Fred. Bennett was with me; when we were about half a mile from Falls Mills we heard the train. We ran to get to depot before train and when near depot looked back and saw train coming. Fred. ran on ahead of me to get tickets; I saw train was coming on behind me and thought it was on left-hand track and I got on right-hand track and looked back, but it was too late to get off and train struck me and knocked me off to one side. They backed train and got me and brought me to Pocahontas. After train struck me I rolled myself under platform.

"(Signed)    SAM. GLENN.

"April 21, 1897."

Witness continuing, said:

"That statement is about right. It was just about what I told the jury to-day. When I was struck I was right opposite the platform. The train slowed up before it got to the station. It stopped in less than its length. I was not insensible after it hit me. I didn't exactly get under the platform; I was knocked under. I crawled out and got on the train and went to Pocahontas. I do not remember speaking or smiling at the engineer when I got off at Pocahontas."

### RE-DIRECT EXAMINATION.

"The train was about half a mile from the station when I changed tracks."

The counsel for the plaintiff here announced that he rested the case. Counsel for defense then moved to dismiss the case on the evidence of plaintiff's witness. The Court allowed the motion under exceptions from plaintiff. The plaintiff took nonsuit and appealed.

*J. S. Grogan,* for the plaintiff.
*Watson, Buxton & Watson,* for the defendant.

COOK, J.   The plaintiff is not entitled to recover, upon his own testimony, which is the only evidence offered.   It was immaterial to him whether warning signals were given or not.   He heard the train when a mile and a half away, and heard it coming all along.   The sounding of whistles and ringing of bells could not have increased his knowledge of the approach of the train.   When it was within 200 or 250 yards, he looked back and saw it coming, and changed from one track to the other.   He recognized the fact of danger. The railroad track itself was a warning of danger, made imminent by the approaching train.   It was then his duty to keep his "wits" about him and to use them for his own safety. He knew or ought to have known that he was a trespasser, and it was his duty to have gotten out of the way of the train. The defendant was under no obligation to stop its train at the sight of a man on its track.   It was apparent to the engineer that the plaintiff was in full possession of his faculties and could take care of himself, as was manifested by his "walking lively," carrying a grip-sack and looking back, and he had a right to presume that the plaintiff would get out of the way of the train in due time.   That he did not do so was his own fault, and he should suffer the consequences of his own folly.

The time has not yet come when railroad companies are obliged to furnish trespassers with personal guides and guardians to protect them from their own wilful misconduct, while experimenting with themselves around trains and engines.   The paramount duty of a railroad company is to serve the best interests of public travel and traffic (which can not be done if delays have to be made in deference to those who wrongfully appropriate to their own use the rights of

way on the railroad tracks, while in possession of their mental faculties and physical power to take care of themselves and avoid injury.

No negligence upon the part of the defendant appearing, his Honor very properly dismissed the action.

No error.